32 C.C.P.A.(Patents)

## In re KOKATNUR.

### Patent Appeal No. 4896.

Court of Customs and Patent Appeals.

Dec. 11, 1944.

Frederic P. Warfield, of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner as to the rejection of certain claims embraced in appellant's application for patent for a dehydrating process and the resultant product.

The appeal as taken to us embraced six process claims, numbered 41 to 46, inclusive, and one product claim, numbered 47. At the hearing before us appellant withdrew his appeal as to (process) claim 45. So, we have for consideration five process claims and one product claim.

We first consider (excluding withdrawn claim 45) the process claims. Of these, claim 41 is representative. It reads: "41. A process for completely dehydrating water soluble inorganic materials containing chemically combined water liberatable only at temperatures in the order of 150°C. and which are hydrolizable which process com-

prises the removal of water by introducing therewith a water-immiscible organic diluent having a boiling point of at least 150°C. and which is non-reactive with said materials and a non-solvent thereof, and which at a temperature slightly below its boiling point will produce a partial pressure which only when added to the partial pressure of the last hydrate at the same temperature is in excess of the external pressure, and then distilling the resulting mixture until all water both chemically and mechanically held by said materials is removed, the amount of diluent added being in excess of that required to remove all of said water."

The brief on behalf of appellant states:

"Claim 42 is limited to a process for producing anhydrous and caustic alkali oxides or hydroxides. This claim is more limited than claim 41 and everything said as to that claim applies equally to claim 42.

"Claim 43 contains all the limitations already referred to in connection with claim 41 and is further specifically limited as to the class of compounds with which it is to be used.

"Claims 44 to 46 inclusive also have all the limitations of claim 41, already discussed in detail with other added limitations and it is thought that these claims need not be discussed in detail."

It is apparent from the foregoing that there are no limitations in claims 42, 43, 44, and 46 which require their consideration separately from claim 41. In other words, all the process claims now before us stand or fall together.

They were rejected on the ground of lack of invention over prior art, the references as listed in the decision of the board being:

"Copisarow, 'Dehydration of Salts', Nature, Vol. 128, page 838 (Nov. 14, 1931).
Jones et al., 'Determination of Moisture by the Volatile Solvent Method', Analyst, Vol. 52, pages 383-387 (1927).

| Babbit | 150,508 | May 5, 1874 |
| Baume (Brit) | 395,421 | July 20, 1933 |
| Neumann | 2,048,962 | July 28, 1936 |
| Reitz | 971,144 | Sept. 27, 1910 |

\* \* \* \* \* \*

Othmer et al., 'Anhydrous Sodium Hydroxide', Ind. & Eng. Chem., Vol. 32, pages 154-160 Feb. 1940, (not cited as anticipatory).

Mellor, 'Inorganic and Theoretical Chemistry', Vol. III, page 236 (1923).
Badger & McCabe, 'Elements of Chemical Engineering', first edition, (1931). McGraw-Hill, New York."

In the course of his statement following the appeal to the board, the examiner described the subject matter as follows:

"The claims are drawn to a process for dehydrating aqueous solutions of materials which tend to form hydrates which give up their water of hydration only with difficulty, and some of which tend to hydrolyze or decompose in solution when heated at very high temperatures. Such materials include sodium hydroxide, magnesium chloride, and zinc chloride, as well as many other compounds. When such solutions are evaporated ordinarily, either a high vacuum is required to get the last trace of water out, or excessively high temperatures are required.

"Applicant dehydrates these solutions by heating them with liquids which do not mix with the water solutions, and which are themselves somewhat less volatile than water. Applicant's preferred liquid additive agent is kerosene."

In his brief appellant commenting upon the foregoing says:

"This is quite correct and clear. The claims however have still further limitations.

"Claim 41 limits the process to soluble inorganic materials containing chemically combined water, liberatable only at temperatures of 150°C. \* \* \* Applicant's whole purpose is to remove the water of combination from such substances. Substances, such as sodium hydroxide, with which applicant is particularly concerned liberate combined water at 150°C. or higher, and hence applicant has chosen a temperature in the order of 150°C. to define the invention.

"This claim next defines the diluent as a water-immiscible organic diluent having a boiling point of at least 150°C. and which is non-reactive with said materials and non-solvent thereof.

"We have then a process carried on with certain specifically defined materials and the use of such materials is necessary to obtain the result desired. The further definition of the solvent states that at a temperature slightly below its boiling point, it will produce a partial pressure which only when added to the partial pressure of

the hydrate at the same temperature is in excess of the external pressure. The resulting mixture is then distilled until all water chemically and mechanically held by said materials is removed. The claim closes with the very definite limitation that the amount of diluent added is to be in excess of that required to remove all of the water. If this were not done there would be no diluent remaining to provide the desired protective coating."

Of the references above listed the ones principally relied upon below in connection with the process claims before us are the articles of Copisarow, Jones et al., and Mellor. The first two are the only ones referred to in appellant's reasons of appeal.

In applying the references the examiner said:

"Applicant's process claims call for completely dehydrating inorganic solutions by distilling such solutions with inert, immiscible liquid which has a boiling point of at least 150°C., in amount in excess of that required to remove all of the water. Applicant maintains that the limit of 150°C. is critical and that liquids boiling at lower temperatures would not be operative. However, the art shows that lower boiling liquids do operate in this sort of process and any advantage there might be in using higher boiling added liquids could be predicted by simple calculation from the steam distillation law discussed above, and would not amount to any surprising discovery by applicant. The Copisarow publication discloses complete dehydration of salts of the class with which applicant's claims are concerned, by distilling with neutral liquids such as toluol (boiling point 111°C.) When the toluol is removed by drying over solid paraffin to remove the toluol only, the salt is found to be completely free from water, in the specific example shown for copper sulfate. As shown by Mellor, copper sulfate is included in the class of materials which applicant includes in claim 41 in reciting, 'water-soluble inorganic materials containing chemically combined water liberatable only at temperatures in the order of 150°C. and which are hydrolyzable.'

"Copisarow teaches (line 7) that either a hydrated salt or its aqueous solution may be completely dehydrated in this way; and specifically mentions magnesium chloride, one of applicant's species. The reference further states, 'owing to its elasticity as regards medium, temperature, and pres-

sure, the process may be of general application.'

"The only distinction in applicant's broad claims over what Copisarow specifically discloses is the limit of 150°C. on the boiling point of the added liquid. This limit has not been shown to be critical or to have any unexpected advantage whatever over toluol, which the reference discloses. It is thought that applicant is not entitled to a patent for merely calculating from known mathematical relations that removal of water would proceed faster when a higher-boiling added liquid is used.

"Jones teaches the dehydration of various materials by distilling with water-immiscible liquids. The use of the method to determine moisture content of materials by measuring the volume of water removed, indicates the completeness of dehydration effected by this method. Jones discloses specifically the use of kerosene as a dehydrating agent. No invention can be seen in dehydrating inorganic materials of the class recited in the claims by this method.

"Applicant also claims application of this process specifically to sodium hydroxide, magnesium chloride, and zinc sulfate. It is not thought that any of these species is patentable to applicant in view of Copisarow's indication that the process would be expected to be generally applicable. None of these specific compounds behaves unexpectedly in the old process."

The discussion on the part of the board was quite brief and amounted to nothing more than an approval of the examiner's holding with respect to the process claims on appeal.

The brief of the Solicitor for the Patent Office before us correctly states that "the language used in appellant's specification and in the appealed claims is complex and, in some cases, indefinite," and we have experienced some difficulty in fully understanding appellant's contentions as to the errors alleged in the reasons of appeal.

Apparently, it is appellant's position that the boiling point of "at least 150°C." of the water-immiscible organic diluent defined in claim 41, supra, constitutes a critical element. It will be noted that the boiling point of the toluol referred to in the Copisarow publication is 111°C., and it is urged that the latter "accordingly does not come within the class of water immiscible organic diluents having a boiling point of at least 150°C."

Appellant also stresses the word "completely," as used in the introductory clauses of claims 41 and 46—"completely dehydrating water soluble inorganic materials"—and urges that the prior art does not teach complete dehydration, his theory seemingly being that complete dehydration is accomplished only by distilling the materials, or solutions, with a water-immiscible liquid added as a diluent having a boiling point of at least 150°C., the amount of the diluent being in excess of the amount required to remove all of said water. In his brief it is said:

"Copisarow * * * does not define a distillation which will remove all water both chemically and mechanically held by said materials, nor disclose any process which would necessarily result in such action.

"Copisarow makes no suggestion whatsoever of the very important and definite characteristic of this process in that the amount of diluent added is in excess of that required to remove all of said water. If this were not done the coating would not be present in the product."

It will be observed that the claim above quoted as illustrative contains the language "which at a temperature slightly below its boiling point will produce a partial pressure which only when added to the partial pressure of the last hydrate at the same temperature is in excess of the external pressure." Standing alone, this language is cryptic, and appellant does not seem to rely upon it as a limitation which, of itself, adds patentability to the claims. It was interpreted by the examiner, and his interpretation is epitomized in the brief of the Solicitor for the Patent Office (page references to the record being omitted) as follows: " * * * the actual principle involved is extremely simple, as is fully pointed out in the examiner's statement * * *, and explained in the Badger et al. text * * *. This principle is that if two immiscible liquids are heated together the evaporation of both will begin when the sum of their separate (or partial) pressures reaches the pressure on the apparatus in which the liquids are placed. As stated by Badger et al.: "This means that the materials are volatilized at temperatures considerably lower than their boiling temperature at the total pressure chosen. This makes possible the distillation of high-boiling substances without decomposition."

The solicitor's brief then adds: "The application of this principle to the dehydration of magnesium chloride, one of the specific substances treated by the appellant, is disclosed in the Copisarow article * * *. In the process there described toluol is the immiscible liquid which is used in expelling the water."

It is deemed unnecessary to elaborate further upon the issues and arguments relating to the process claims under consideration, and we proceed to a statement of our conclusions respecting them:

■ (1) Use of the word "completely" in connection with the word "dehydrating" in the introductory clauses of claims 41 and 46 is of no patentable significance in this case.

■ (2) There is no showing by appellant in his specification, or otherwise, that the 150°C. boiling point is a critical element.

The expression "liberatable only at temperatures of 150°C." is indefinite, and, notwithstanding appellant's contention to the contrary, we agree with the examiner's statement that "The limit as to boiling point of the added liquid being above 150°C. is only an arbitrary selection of convenient operating conditions which one skilled in the art could determine by simple calculation from known mathematical relations." In other words, appellant made no discovery of anything new with reference to heating two immiscible liquids together.

■ No reasons are presented which justify a holding that the tribunals of the Patent Office erred in rejecting claims 41, 42, 43, 44, and 46.

The product claim on appeal reads: "47. As a new product, in finely divided form, anhydrous, solid, water soluble, hygroscopic inorganic material, each particle whereof has a superficial coating of a water insoluble, organic diluent having a boiling point of at least 150°C. which is inert to said anhydrous material and adapted to protect the same material from atmospheric reactions, said product being characterized by greater protection against action of the product on human tissue."

The examiner rejected the claim along with three other product claims (numbered 48, 49, and 50) upon prior art (specifically upon Copisarow, Jones and Babbit), and also rejected it as "being indefinite," say-

ing: "Claim 47 is broader [than claim 48], being drawn to anhydrous granular hygroscopic material having a coating of a water-insoluble inert organic 'diluent' having a boiling point of at least 150°C. The term 'diluent' is not proper as used in this claim since the coating material dilutes nothing. Claim 47 further states, indefinitely, that the coated product is characterized by 'greater protection against action of the product on human tissue'. This latter limitation is wholly meaningless since the great majority of materials of the class with which the claim is conzerned have no particular action on human tissues. Magnesium chloride, for example, is fairly harmless, as is copper sulfate, magnesium sulfate, sodium sulfate, and cobalt chloride, to mention only a few. Moreover, while the claim mentions 'greater' protection, there is no basis whatever for comparison. Claim 47 is too indefinite to be allowable even if there were no art."

The board stated that "Claims 48, 49 and 50 [which are product claims] are not anticipated by Copisarow or Jones, or Babbit," and held those claims allowable. It did not state that claim 47 was not anticipated by such references, its only specific statement relating to the claim being: "We also agree with the Examiner that claim 47 is too vague and indefinite to point out applicant's invention as required by law."

In his reasons of appeal appellant did not assign error as to rejection of the claim upon the art cited, but confined his assignment to the rejection upon the basis of indefiniteness. The brief of the Solicitor for the Patent Office, therefore, suggests that the holding below should be affirmed here without consideration of claim 47 on its merits, but adds "In the event that it is considered on the merits, it should be affirmed for the reasons given by the examiner * * *."

It is argued by appellant, in effect, that since the board held product claims 48, 49, and 50 not to be anticipated by the prior art, the same must be regarded as applying to claim 47.

 In view of the state of the record and especially the very meagre discussion on the part of the board, we feel constrained to agree with the reasoning of appellant in respect to the matter of prior art, but we are unable to agree that there was error in rejecting the claim on the ground of indefiniteness for the reasons given by the examiner and adopted by the board as above recited.

Appellant having withdrawn claim 45, the appeal as to it is dismissed, and, for the reasons outlined, the decision of the board as to claims 41, 42, 43, 44, 46, and 47 is affirmed.

Affirmed.